OPINION. Arundell, Judge: The basic question to be resolved in determining the validity of a partnership for Federal tax purposes is whether from all material facts and circumstances it appears that the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of the profits or whether the partnership arrangement was merely an artificial device designed and executed primarily for the purpose of tax avoidance. The salient facts surrounding the formation of the Project Oregon 35023 partnership may be summarized as follows: Edward Viesko and George Hannaman, partners in a construction business, were awarded a contract for Project Oregon 35023 in May 1942, and immediately found themselves in need of credit for the purpose of obtaining the required bonds and working capital. The two partners were unable to obtain the necessary credit until Marie Viesko, the wife of Edward Viesko, contacted the Fred Vieskos. Thereafter the partners obtained the promise of financial assistance from the Fred Vieskos and through them an offer from the J. W. Cranes to provide the partnership with a credit of $100,000 for working capital. It was agreed that the Fred Vieskos and the Cranes would each receive the sum of $20,000 in consideration of the extension of credit. At this point in. the negotiations Edward Viesko and George Hannaman had no intention of bringing their wives or anyone else into the original Viesko & Hannaman partnership. There remained the problem of securing the performance and payment bonds required by the Government. The bonding company refused to furnish such bonds unless the Cranes would enter into an agreement to indemnify the bonding company against any loss the-company might incur on the bonds issued in connection with Project Oregon 35023. J. W. Crane refused to sign such an indemnity agreement unless an agreement could be had that all of the property of Edward and Marie Viesko, Fred and Alta Viesko, and George and. Harriett Hannaman would be subject to and exhausted in satisfaction of any losses sustained by the partnership before recourse could be had against the assets of the Cranes for such purposes. It appears that George Hannaman and the attorney for the partnership had been advised shortly before the meeting of June 1, 1942, of J. W. Crane’s intention to require as a condition of signing the indemnity agreement that all the property of the partners’ wives be made responsible for any partnership losses. To meet this demand the attorney suggested the formation of a partnership which would include the Fred Vieskos and the wives of George Hannaman and Edward Viesko and to that end prepared a partnership agreement. At the meeting of June 1, 1942, Crane formally advised the parties of his terms for signing the indemnity agreement. Following a full discussion of the entire matter by the Hannamans, the Edward Vieskos, the Fred Vieskos, the Cranes, a representative of the bonding company, and the attorney for the partnership, the partnership agreement previously prepared by the attorney was thereupon executed between Edward and Marie Viesko, Fred and Alta Viesko, and George and Harriett Hannaman. All of the parties to the partnership agreement, including Harriett Hannaman, signed the instrument with full knowledge of the fact that they were entering into a partnership. We find no merit in the respondent’s contention that the Project Oregon 35023 partnership was a device for tax avoidance. The facts we have recited above demonstrate the existence of a very real and urgent business purpose for bringing the wives into the partnership. The bonding company required an indemnity agreement from the Cranes and J. W. Crane in turn was adamant in his demand that it be agreed that the assets of Harriett Hannaman, Marie Viesko, and the Fred Vieskos, in addition to the assets of the original partners, be first exhausted in satisfaction of any partnership losses. We cannot ignore the fact that it was not until this demand was met by bringing the wives into the partnership that the way was cleared for the partnership to obtain the necessary bonds and working capital. The fact that some arrangement other than a partnership might possibly have been made in order to subject the assets of Harriett Hannaman to any losses incurred in the operation of the Project Oregon 35023 partnership is of no consequence in the present proceeding. The partnership was formed upon the advice of a qualified attorney upon whom the parties had a clear right to rely for advice, and the attorney’s suggestion that a partnership be formed was accepted by the parties in good faith as the best means of obtaining the necessary credit. In O. H. Delchamps, 13 T. C. 281, which involved a factual situation strikingly similar to that of the instant case, we stated : The purpose in forming the partnership was the reasonable and necessary one of securing substantial loans from the banks in order to make the current financial position of the business more secure and to protect the credit standing of the business. Although other means might have been employed to accomplish this purpose, the partners in good faith believed that the formation of the partnership was the most advantageous one for the business. The accomplishment of this purpose is a fact which may not .be disregarded. Harts v. Commissioner, 170 Fed. (2d) 313; certiorari denied, 337 U. S. 733. Respondent places great emphasis upon the testimony of Harriett Hannaman to the effect that she signed the partnership agreement on her husband’s recommendation in order “to help him” and “so they could get this job, be able to build the job.” While it is true that Harriett Hannaman’s reason for joining the partnership was admittedly to help her husband secure the necessary credits and otherwise meet the Government’s requirements in connection with the contract, the real question for our decision is whether Harriett Hannaman and the other parties to the agreement actually intended her to be a partner in the business. We are of the opinion that the parties so intended to join together as partners in the conduct of the Project Oregon 35023 partnership, for the purpose of obtaining the credit of the Cranes, and with the belief that a partnership was a necessary and appropriate means of accomplishing their purpose. By virtue of entering the Project «Oregon 35023 partnership Harriett Hannaman subjected to the risks of the business all of the property she then owned and any she might thereafter acquire so long as she remained a partner. Although her present contribution of credit may have been modest in amount, it was all that she possessed and, more important, it served to remove the last obstacle to the successful conclusion of negotiations with the Cranes. In our judgment the Project Oregon 35023 partnership was a bona fide partnership entered into for genuine business purposes requiring the recognition of Harriett Hannaman therein as a partner for Federal tax purposes. Therefore, the respondent erred in including the profits credited to Harriett Hannaman by the Project Oregon 35023 partnership during the taxable years 1942 and 1943 in the income of the decedent, George Hannaman, for such years. On January 2, 1943, a new partnership was formed which represented a merger of the assets accumulated by the Project Oregon 35023 partnership with those of -the original Yiesko & Hannaman partnership, the purpose of which was to create a single business enterprise with greater capacity for handling larger contracts. This consolidation was made possible with the payment of $20,000 to the Fred Yieskos and their elimination as partners from the Pi’oject Oregon 35023 partnership. Having already held herein that Harriett Hannaman was a bona fide partner in the Project Oregon 35023 partnership there can be no doubt that the transfer of her interest in that partnership constituted a substantial contribution of capital to the new partnership. There is no reason to believe that she regarded the transfer of her interest to the new partnership as either a loan or gift. In our opinion the partnership agreement of January 2, 1943, was merely a new declaration by the parties of their intention to continue to conduct their contracting business as partners. Therefore, we are of the opinion that the respondent likewise erred in his determination that Harriett Hannaman was not a bona fide partner in the new Viesko & Hannaman partnership and that the profits credited to her by that partnership during the taxable year 1943 were taxable in that year to the decedent. Reviewed by the Court. Decision will he entered, under Rule 60.